**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-02929-REB

JOHN D. WISE,

     Applicant,

v.

FALK, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

**ROBERT E. BLACKBURN, District Judge**.

     This matter is before me on the *pro se* Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 ("Application") [# 1],[1] filed November 7, 2012, by

Applicant John D. Wise.  Respondents answered the Application  [# 20], and Applicant

filed a traverse [#25].  After reviewing the pertinent portions of the record in this case

including the Application, the Answer, the Traverse, and the state court record, I

conclude that the Application should be denied.

## I.  BACKGROUND

     In 2004, a Denver District Court jury convicted Mr. Wise of attempted second-

degree murder; first-degree assault; four counts of aggravated robbery; and attempted

---

[1]"[# 1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

aggravated robbery.  [# 10-1, at 6].  The following summary of relevant facts is taken

from the Colorado Court of Appeals decision on direct review of Applicant's conviction:

> On November 23, 2003, at 12:15 a.m., [Applicant] approached the counter of a convenience store with a bottled beverage. [Applicant] placed money on the counter, pointed a gun at the cashier's head, and demanded money.  After obtaining money from the cash registers, [Applicant] pointed his gun at a female customer and demanded, and received, money from her. [Applicant] then exited the convenience store, approached a car in the parking lot, pointed his gun at the driver's chest, and demanded, and received, money from the driver.  The driver's wife and infant daughter were passengers in the car. [Applicant] then demanded, and received, money from the driver's wife.  Before leaving the scene, [Applicant] fired a shot toward the driver.
>
> At 12:37 a.m., [Applicant] approached a grocery store service desk with a bag of chips in his hand, pulled out his gun, pointed it at the security guard, and demanded the security guard's gun.  The security guard unsuccessfully attempted to take [Applicant's] gun. [Applicant] fired five shots at the guard.  After the guard had turned away to flee, the fifth shot hit the guard in the spine, leaving him paralyzed from the waste down.
>
> The grocery store robbery was captured on videotape and broadcasted on the local news.  All four of the convenience store victims recognized the man in the video as the one who had robbed them.  Two of the convenience store victims also identified defendant in a photo line-up. In addition, [Applicant's] fingerprints were found on the beverage bottle that he had left on the convenience store counter.

See People v. Wise (Wise I), No. 04CA2534 (Colo. App. June 28, 2007) (unpublished)

[# 10-6, at 3-4].

The state district court sentenced Applicant to an aggregate prison term of 152

years in the Colorado Department of Corrections.  [State Court R., 10/22/04 Hrg. Tr., at

20-21].  On June 27, 2007, the Colorado Court of Appeals affirmed Mr. Wise's

convictions and sentence and remanded the case to the state district court with

directions to correct the presentence report. [# 10-6].  The Colorado Supreme Court

denied Mr. Wise's petition for certiorari review on November 13, 2007. [# 10-8].

2

On December 14, 2007, Mr. Wise filed a Colo. Crim. P. Rule 35(b) motion for

sentence reconsideration, which the state district court denied on December 21, 2007.

[# 10-1, at 4].

On November 6, 2008, Mr. Wise filed a Colo. Crim. P. Rule 35(c) motion for post-

conviction relief, which the state district court denied on October 19, 2009.  [*Id.* at 3].

The Colorado Court of Appeals affirmed the trial court's order in *People v. Wise* (*Wise*

*II*), No. 09CA2355 (Colo. App. March 29, 2012). [# 10-13].  The Colorado Supreme

Court denied Applicant's petition for certiorari review on August 13, 2012.

[# 10-15].

Mr. Wise initiated this action on November 7, 2012.  He asserts seven claims in

the Application: (1)(a) the trial court violated his Fourteenth Amendment due process

rights when it denied his motion to continue trial so that counsel could present alternate-

suspect reverse-similar evidence; and (b) counsel's failure to investigate and present

alternative suspect evidence at trial constituted ineffective assistance, in violation of the

Sixth Amendment; (2) the trial court violated his due process rights when it denied a

challenge for cause to a prospective juror whose response during voir dire

demonstrated that he could not be fair and impartial; (3) his sentence is illegal and

unconstitutional because the trial court imposed consecutive sentences for attempted

murder and first-degree assault where the convictions were supported by identical

evidence; (4) the trial court erred under *Blakely v. Washington*, 542 U.S. 296 (2004), in

concluding that the crimes of attempted second-degree murder and attempted

aggravated robbery were subject to "crime of violence" sentencing; (5)(a) the State's

failure to preserve fingerprint evidence under the standards of *Brady v. Maryland*, 373

3

U.S. 83 (1963), violated his Fourteenth Amendment due process rights; and (b) his counsel was constitutionally ineffective in failing to investigate the fingerprint evidence before it was destroyed; (6) the trial court's (a) denial of a continuance to investigate a newly-discovered surveillance videotape; or, in the alternative, (b) failure to exclude the videotape as a sanction under the standards of *Brady*, violated his constitutional rights to due process and a fair trial; and, (7) the state district courts violated his constitutional rights by denying his state post-conviction motion without first conducting an evidentiary hearing. [# 1, at 5-6; 14-29].

Respondents have conceded that the Application is timely under the AEDPA one-year limitation period, 28 U.S.C. § 2244(d)(1). [# 11,at 5-7].   Respondents have further conceded that Applicant exhausted state remedies for claim 1(b), 4, and 5(b). [*Id.*, at 14-23].   Respondents argued in their pre-answer response, however, that Applicant's remaining claims were procedurally defaulted. [*Id.* at 10-32].   I concluded in a previous order that claims 3, 5(a) and 6(b) were procedurally barred and that claim 7 presented an issue of state law that is not cognizable on federal habeas review. [# 18, at 12].   I further found that Applicant exhausted state court remedies for claims 1(a), 1(b), 2, 4, 5(b), and 6(a) of the Application. [*Id.*].   I thus address the merits of claims 1(a), 1(b), 2, 4, 5(b), and 6(a) below.

## II.  LEGAL STANDARDS

### A.  28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

4

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).  In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."  *Id.* at 784.  Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 784-85.  Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Id.* at 784.  In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated."  *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [the court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."  *Id.* at 1178.

5

"[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

The *Richter* presumption is also applicable when a state-court opinion addresses some but not all of those claims. *Johnson v. Williams*, 133 S. Ct. 1088, 1094-98 (2013). For purposes of § 2254(d), when a state court rules against a defendant in an opinion that rejects some of the defendant's claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Id.* at 1094-96. Federal habeas courts should not assume that any unaddressed federal claim simply was overlooked because a state court does not uniformly discuss separately every claim referenced by a defendant. *Id.*

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings
> in cases where the facts are at least closely-related or
> similar to the case *sub judice*. Although the legal rule at
> issue need not have had its genesis in the closely-related or
> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established

federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1).  *See id.* at

1018.

      If a clearly established rule of federal law is implicated, the court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

      The court's inquiry pursuant to the "unreasonable application" clause is an

objective inquiry.  *See Williams*, 529 U.S. at 409–10.  "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather that application must also be unreasonable."  *Id.* at 411. "[A] decision

is 'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law." *Maynard*,

468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires
> considering the rule's specificity. The more general the rule, the more
> leeway courts have in reaching outcomes in case-by-case determinations.
> [I]t is not an unreasonable application of clearly established Federal law
> for a state court to decline to apply a specific legal rule that has not been
> squarely established by [the Supreme] Court.

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted). In conducting this analysis,

the court "must determine what arguments or theories supported or . . . could have

supported[ ] the state court's decision" and then "ask whether it is possible fairminded

jurists could disagree that those arguments or theories are inconsistent with the holding

in a prior decision of [the Supreme] Court." *Id*. Moreover, "review under

§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the

claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state
> prisoner must show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that there was an
> error well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

The court reviews claims asserting factual errors pursuant to 28 U.S.C.

§ 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002).

Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the

relevant state court decision was based on an unreasonable determination of the facts

in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), the court

must presume that the state court's factual determinations are correct and the petitioner

bears the burden of rebutting the presumption by clear and convincing evidence.  "The

standard is demanding but not insatiable . . . [because] '[d]eference does not by

definition preclude relief.'"  *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting

*Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is

not procedurally barred, the Court must review the claim *de novo* and the deferential

standards of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th

Cir. 2004).

## B. PRO SE LITIGANT

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and

other papers liberally and hold[s] them to a less stringent standard than those drafted by

attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations

omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a pro se

litigant's "conclusory allegations without supporting factual averments are insufficient to

state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th

Cir. 1991). A court may not assume that an applicant can prove facts that have not been

alleged, or that a respondent has violated laws in ways that an applicant has not

alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

9

459 U.S. 519, 526 (1983).  An applicant's pro se status does not entitle him to an

application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### III.  MERITS OF THE CLAIMS

### A.  Claims Based on Trial Court's Denials of Requests to Continue Trial

In claim 1(a), Applicant asserts that the trial court violated his Fourteenth

Amendment due process rights when it denied his motion to continue trial so that

counsel could present alternate-suspect reverse-similar evidence.  In claim 6(a),

Applicant contends that the trial court's denial of a continuance to investigate a newly-

discovered surveillance videotape violated his constitutional rights to due process and a

fair trial.

As a fundamental matter of due process, a criminal defendant has the right to

present to the jury admissible evidence that might influence the determination of guilt.

*See, e.g., Taylor v. Illinois*, 484 U.S. 400, 408 (1988); *Pennsylvania v. Ritchie*, 480 U.S.

39, 56 (1987).  Notwithstanding, "[t]he matter of continuance is traditionally within the

discretion of the trial judge, and it is not every denial of a request for more time that

violates due process . . . ." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).  Only when the

state trial court's denial is "arbitrary"– e.g., "a myopic insistence upon expeditiousness in

the face of a justifiable request for delay"– will it be seen as a denial of due process. *Id.*

"There are no mechanical tests for deciding when a denial of a continuance is so

arbitrary as to violate due process." *Ungar*, 376 U.S. at 589.  However, in the context of

a habeas corpus petition, the petitioner must show both an abuse of discretion by the

trial court, and that the denial was so "arbitrary and fundamentally unfair that it violates

constitutional principles of due process." *Case v. Mondragon*, 887 F.2d 1388, 1396

(10th Cir.1989) (internal quotation marks and citation omitted).  The Court focuses on

the "need for a continuance and the prejudice or lack of prejudice resulting from its

denial, in the context of a fundamental fairness evaluation." *Id.* at 1397.

**1.     claim 1(a)**

Applicant asserts that the trial court violated his Fourteenth Amendment due

process rights when it denied his motion to continue trial so that counsel could present

alternate-suspect reverse-similar evidence.

The Colorado Court of Appeals rejected Applicant's claim based on the following

reasoning:

> Approximately twenty days prior to the scheduled trial, defense counsel filed a motion requesting that the trial be delayed because she had just received new information constituting "reverse similar" evidence, which she asserted needed to be investigated prior to trial.  Hearings were held on the motion during which defense counsel described how [Applicant's] brother was arrested for robbery in a location close to the grocery store; [Applicant] and [Applicant's] brother looked "strikingly similar"; and [Applicant's] brother was wearing clothes similar to the clothes worn by the perpetrator of the robberies with which [Applicant] was charged.  In addition, defense counsel stated that her investigator was going on vacation and would not be able to be present during trial.
>
> The prosecutor responded that [Applicant's] brother had attempted a purse snatching of an elderly woman without the use of a weapon; and that whatever investigation needed to be done, could be done prior to trial.  In addition, the prosecutor stated:
>
>> I'm going to ask the crime lab to run [Applicant's brother's] fingerprints against [fingerprints recovered from the grocery store], and I can have that done and have the results back certainly before trial, maybe even by next week. . . .  I assure you, if they come back to [Applicant's brother], there will be a different case that confronts this Applicant.
>
> The trial court denied [Applicant's] motion for a continuance.

>Here, the "reverse similar" evidence was clearly known to [Applicant] prior to trial. [Applicant] has not alluded to any evidence which the trial court's denial of the motion to continue prevented him from obtaining.  Nor has he alluded to any exculpatory information concerning which the investigator could have testified.  Given these circumstances, we conclude that the trial court did not abuse its discretion in denying defendant's first motion to continue.

[*Wise I*, # 10-6, at 5-7].

The state appellate court's factual findings are presumed correct under 28 U.S.C. § 2254(e)(2) and are supported by the state court record.  [*See* State Court R., 7/22/04 and 7/24/04 Hrg. Trs.].  Applicant has not attempted to rebut the state court's findings that he knew about the "reverse similar" evidence prior to trial, that he failed to identify any evidence which the trial court's ruling prevented him from obtaining, and that the investigator's absence at trial did not affect the presentation of any exculpatory evidence.  The Colorado Court of Appeals' resolution of Applicant's due process claim was not contrary to, or an unreasonable application of, federal law because Applicant fails to point to any evidence to show that he was prejudiced by the trial court's refusal to grant a continuance.  Applicant's mere speculation that the outcome of his trial would have been different if defense counsel had been granted additional time to investigate the reverse similar evidence, [*see* # 25, at 5], is not enough to demonstrate a constitutional violation.  *See generally United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995) (analyzing assertion of prejudice in context of ineffective assistance of counsel claim).  The Court thus cannot find that the denial of a continuance was so arbitrary as to violate due process.  Applicant is not entitled to federal habeas relief for claim 1(a).

**2.     claim 6(a)**

In claim 6(a), Applicant contends that the trial court's denial of a continuance to investigate a newly-discovered surveillance videotape violated his constitutional rights to due process and a fair trial.

The state appellate court resolved Applicant's claim as follows:

> On the first day of trial, [Applicant] requested a continuance based on additional video footage, which had been handed over to defense counsel two days prior.  The district attorney had gone to retrieve the original video of the grocery store shooting when he discovered a video with additional footage from the grocery store surrounding the time of the shooting.  He immediately turned the video over to the defense attorney. The defense counsel described the importance of the additional footage as follows:
>
>> In all candor to the Court, there is not that much more on there that is of relevant to this case.  However, there is some panning or footage of the outside of the [grocery store] which I think to my naked eye I can't tell but that may lead to some information as to others by vehicle involved, other people who were in that store at the time or saw someone leaving. But I think that would have to be done and require someone to go with the video and enhance or enlarge it.
>
> The court denied the motion and stated that there was no evidence the withholding of the video was intentional and that the video did not appear to be exculpatory.  Moreover, the court noted that there were no people shown in the parking lot and it was highly unlikely that any investigation of cars in the parking lot would produce any person who had not already come forward.  Given these circumstances, and because [Applicant] has not made a showing of any actual prejudice, we conclude that the trial court did not abuse its discretion in denying [Applicant's] second motion to continue.

(*Wise I*, # 10-6, at 7-8; *see also* State Court R., 8/9/04 Trial Tr., at 5-13].

The Colorado Court of Appeals' determination was based on a reasonable determination of the facts in light of the evidence presented to the trial court because the evidence suggested only a possibility that researching the license plates of the cars shown in the parking lot might reveal additional witnesses.  Again, the Court cannot find

that the state trial court's denial of a continuance was so arbitrary as to violate due

process.  Applicant cannot prevail on claim 6(a).

**B.      Ineffective Assistance of Counsel Claims**

Applicant asserts in claim 1(b) that counsel's failure to investigate and present

alternative suspect evidence at trial constituted ineffective assistance, in violation of the

Sixth Amendment.  In claim 5(b), Applicant maintains that his trial counsel was

constitutionally ineffective in failing to investigate fingerprint evidence before it was

destroyed.

To prevail on a claim of ineffective assistance of counsel, Applicant must show

that: (1) counsel's legal representation fell below an objective standard of

reasonableness; and (2) "the deficient performance prejudiced the defense." *Strickland*

*v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance

is highly deferential.  *Id.*  at 689.  Counsel's decisions are presumed to represent "sound

trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have

been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914

(10th Cir. 1999) (internal quotations omitted).  Under the AEDPA standard of review,

"the question is not whether counsel's actions were reasonable.  The question is

whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential

standard." *Richter*, 131 S.Ct. at 788.

Prejudice exists when there is a reasonable probability that, but for counsel's

defective representation, the result of the proceeding would have been different.

*Strickland*, 466 U.S. at 693.  The likelihood of a different result must be substantial, not

just conceivable.  *Id.*  The Court need not address both prongs of the *Strickland* inquiry if

14

Petitioner's claim fails on one.  *Id.* at 697.

### 1.    claim 1(b)

Applicant claims that counsel's failure to investigate and present alternative suspect evidence at trial constituted ineffective assistance, in violation of the Sixth Amendment.

The Colorado Court of Appeals rejected Applicant's claim as "speculative and conclusory" because his allegations that counsel should have presented evidence about an alternate suspect – i.e., Applicant's brother– "do not support a finding that such evidence would have been admissible." [*Id.*].   The state appellate court further concluded that Applicant had failed to demonstrate prejudice because although Applicant alleged that he and his brother look alike, "without knowing what an investigator or [the brother] would have said at trial, we have no reason to think that the jury would have found the alleged similarity meaningful." [*Id.* at 6].

The state appellate court's resolution of Applicant's claim comported with *Strickland*.  The mere possibility that Applicant would have been acquitted if counsel presented the alternative suspect evidence at trial is not sufficient to demonstrate prejudice.  *See Strickland*, 466 U.S. at 693 (the likelihood of a different result must be substantial, not just conceivable).  As such, Applicant cannot prevail on claim 1(b).

### 2.    claim 5(b)

Applicant asserts that his trial counsel was constitutionally ineffective in failing to investigate fingerprint evidence before it was destroyed.

> After the 7-Eleven robbery, police found a soda bottle that the
> suspect left on the counter.  A fingerprint comparison showed that

Applicant's fingerprints matched some prints on the bottle.  Later, the bottle was destroyed.  It was revealed at trial that the bottle contained additional fingerprints that did not match Applicant's prints.
 . . . .

At a pretrial hearing, the prosecution indicated that it would run a comparison of [Applicant's brother's] fingerprints against those found on items obtained from the King Soopers.  Later, in his postconviction motion, [Applicant] alleged that defense counsel should have obtained the results of that fingerprint comparison. [Applicant] also alleged that counsel should have hired his own experts to examine items recovered from both stores.

These claims fail because [Applicant's] allegations, even if true, do not support a finding of prejudice.  On the basis of [Applicant's] allegations, there is no reason to think that the fingerprint comparisons would have yielded evidence that either linked [Applicant's brother] to the King Soopers robbery, or distanced Wise from the 7-Eleven robbery. (Although [Applicant] claimed it "possible" that his prints were not on the bottle recovered from the 7-Eleven, he did not allege any facts to suggest why that might be so.).

[*Wise II*, # 10-13, at 4, 6-7; *see also* State Court R., 7/24/04 Hrg Tr., at 6-7; 8/10/04 Trial Tr., at 80-82, 93; 8/11/2004 Trial Tr., at 58-60; 124-27; 137-38].

The Colorado Court of Appeals reasonably determined that Applicant's claim failed on the *Strickland* prejudice prong because Applicant does not point to any evidence that had counsel further investigated other fingerprints on the bottle obtained from the 7-Eleven, there was a reasonable likelihood that Applicant would have been acquitted.  It is undisputed that Applicant's fingerprints were on the bottle and several witnesses placed him at the crime scenes. [State Court R., *see generally* 8/10/04 Trial Tr.; 8/11/04 Trial Tr., at 58-60; 124-27].  Allegations based on unsubstantiated assertions of fact are not sufficient to satisfy *Strickland*.  *See Cummings v. Sirmons*, 506 F.3d 1211, 1228-29, 31-32 (10th Cir. 2007).

Further, Applicant cannot show that trial counsel's decision concerning the

16

presentation of expert fingerprint analysis evidence was not the product of a reasonable strategic choice.  *See Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002). Importantly, Applicant does not identify any expert witness who would have testified that running multiple tests on fingerprint evidence can yield different results.  *See Snow v. Sirmons*, 474 F.3d 693, 724-25 (10th Cir. 2007) (rejecting ineffective assistance of counsel claim when habeas petitioner failed to indicate "why counsel's failure to object to the evidence was deficient and how such alleged failure prejudiced him"); *Cummings*, 506 F.3d at 1233 (holding that a petitioner's ineffective assistance claim failed to satisfy *Strickland*'s first prong because nothing demonstrated the content of a potential expert's testimony).  Accordingly, Applicant cannot prevail on claim 5(b).

## B.  Claim Two

For his second claim, Applicant asserts that the trial court violated his due process rights when it denied a challenge for cause to a prospective juror, whose response during voir dire demonstrated that he could not be fair and impartial.

During voir dire, the prosecutor asked the jury whether anyone had been a victim of "any kind of crime that has had an impact on them where they just don't think they could be fair in this case." [State Court R., 8/9/04 Trial Tr., at 170].  In response, one prospective juror described how he had been robbed at gunpoint while managing a clothing store when he was eighteen. [*Id.* at 171].  The following exchange ensued between the prosecutor and the prospective juror.

> Prosecutor: Given that experience, could you sit on this jury and be fair to both sides?
>
> Prospective Juror: I don't know.  We'll wait and see as the evidence unfolds.

> Prosecutor: Let me ask you this: Let me ask it this way: If the judge instructs you that your job as a juror is to apply the facts to the law and render a verdict, can you set your experience aside and listen and honor the judge's order to you as a juror?

> Prospective Juror: To the best I can, yes.  I don't know yet so I'll do the best I can.

[*Id.* at 171-72].  The trial court denied Applicant's challenge for cause, and he subsequently exhausted his allotment of peremptory challenges on other prospective jurors. [*Id.* at 194-95; 199-201].

In the direct appeal proceeding, the Colorado Court of Appeals applied COLO. REV. STAT. § 16-10-103(1)(j) (2006) to resolve Applicant's claim.  Under the state statute, a judge shall grant a challenge for cause if a prospective juror has a state of mind "evincing enmity or bias toward the defendant or the state." *Id.*  Applying an abuse of discretion standard, the state appellate court resolved Applicant's claim on the following grounds:

> Here, the prospective juror expressed concern about his ability to be fair to both sides.  An expression of concern by a potential juror regarding some facet of the case or about jury service should not result in the automatic exclusion of that person for cause. [State case law citations omitted].

> Here, the juror indicated that he could set aside his experiences and listen and follow the judge's order "[t]o the best I can, yes."  While the incident in question had happened to the juror himself, it also appeared to have happened years beforehand.  Moreover, the trial court had the opportunity to observe the juror as he was questioned and was in the best position to evaluate his credibility and demeanor.

> Given these circumstances, we conclude that the trial court did not abuse its discretion in denying [Applicant's] challenge for cause.

[*Wise I*, # 10-6, at 10-11].

18

It is well settled that the Sixth and Fourteenth Amendments guarantee a defendant the right to an impartial jury. *Ross v. Oklahoma,* 487 U.S. 81, 85 (1988).  A prospective juror must be removed for cause if his views would prevent or substantially impair the performance of his duties as a juror.  *See Wainwright v. Witt*, 469 U.S. 412, 424 (1985).  "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."  *Irvin v. Dowd*, 355 U.S. 717, 723 (1961); *Patton v. Yount*, 467 U.S. 1025, 1036 (1984) (where a criminal defendant sought to excuse a juror for cause and the trial judge refused, the question was simply "did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestations of impartiality have been believed").  A trial court's findings concerning a venireman's bias are "based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." *Wainwright*, 469 U.S. 412, 428 (1985); *see also Uttecht v. Brown*, 551 U.S. 1, 9 (2007)("Deference to the trial court is appropriate because it is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors.") (internal citation omitted).

The trial court's determination of juror impartiality is a question of fact, *see Patton*, 467 U.S. at 1036, and is therefore presumed correct under the AEDPA standard of review.  Applicant does not point to any evidence in the record to rebut the state trial court's finding that the prospective juror could render a fair and impartial verdict.  The state trial court found specifically that the prospective juror indicated that he would listen to the court's instructions and apply them to the law and that he "agree[d] in earlier

questioning that the defendant is innocent until proven guilty and [that the prospective juror] will wait until he's heard the evidence until he . . . . makes [a] determination [of guilt]." [State Court R., 8/9/04 Trial Tr., at 195].  The voir dire as a whole supports the trial court's findings of juror impartiality.  *See United States v. Scott*, 159 F.3d 916, 925-26 (5th Cir. 1998) (district court did not err in denying the defendants' challenge for cause to prospective juror who stated that she would try to set aside her bias toward believing the testimony of a government agent).  Moreover, defense counsel used six peremptory challenges to strike prospective jurors who had not been challenged for cause.[2]  [*Id.*, at 199-201].  Because Applicant does not point to any clear and convincing evidence to show that the jury that convicted him was impartial, I find and conclude that the state appellate court's resolution of Applicant's claim was reasonable in light of the evidence presented in the state court proceeding and was not contrary to, or an unreasonable application of, Supreme Court law.  Applicant thus cannot prevail on his second claim for relief.

## C.  Claim Three

For his third claim, Applicant asserts that the trial court erred under *Blakely v. Washington*, 542 U.S. 296 (2004), in concluding that the crimes of attempted second-degree murder and attempted aggravated robbery were subject to "crime of violence" sentencing.

---

[2] I note that a defendant's constitutional rights are not violated where the trial court denies his challenge for cause and he elects to use a peremptory challenge to achieve an impartial jury.  *See United States v. Martinez–Salazar*, 528 U.S. 304, 307 (2000) ("if the defendant elects to cure [the trial court's error in not excusing a biased juror for cause]  by exercising a peremptory challenge and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right); *Ross*, 487 U.S. at 88.

Under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), any fact other than a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. *Id.* at 490. *Apprendi* applies when the sentence is enhanced beyond the prescribed "statutory maximum," which the Supreme Court has defined as the maximum sentence a judge may impose based on the verdict alone, "without any additional findings." *Blakely*, 542 U.S. at 304.

The Colorado Court of Appeals addressed Applicant's claims pursuant to the standards set forth in *Apprendi* and *Blakely*. [*Wise I*, # 10-6, at 12]. The state appellate court determined:

> Attempted second degree murder, first degree assault, and aggravated robbery all require the imposition of sentences in accordance with § 18-1.3-406, C.R.S. 2006, the crime of violence statute. Sections 18-2-101(3.5), 18-3-103(4), 18-3-202(2)(c), 18-4-302(4), C.R.S. 2006.
>
> Accordingly, no additional findings are necessary for [Applicant] to be sentenced in accordance with the crime of violence statute because the substantive criminal statutes specifically require such sentencing. See People v. Terry, 789 P.2d 374, 376-79 (Colo. 1990). Therefore, as [Applicant] was sentenced within the statutory limits established by the General Assembly for the crimes for which he was convicted, his sentence was not in violation of either Apprendi or Blakely.

[*Id.* at 12-13].

Applicant's sentences based on his convictions for attempted second-degree murder and attempted aggravated robbery are specifically prescribed by state statute, based on the verdicts alone, without any additional factual findings. As such, the state appellate court's rejection of Applicant's claim was consistent with *Apprendi* and *Blakely*. Applicant cannot prevail on claim three in the Application.

## IV. IFP STATUS UNDER 28 U.S.C. § 1915

Finally, I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

## V.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [# 1] filed November 7, 2012, by Applicant, John D. Wise, is **DENIED**;

2. That this case is **DISMISSED WITH PREJUDICE**;

3. That there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); and

4.  That leave to proceed *in forma pauperis* on appeal is denied; however, Applicant may file a motion in the United States Court of Appeals for the Tenth Circuit.

Dated at Denver, Colorado, on May 21, 2013.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge